<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                :
GERMAINE GREENE,                :
                                :   Civil Action No. 10-2017 (RMB)
          Petitioner,           :
                                :
     v.                         :        **O P I N I O N**
                                :
DONNA ZICKEFOOSE,               :
                                :
          Respondent.           :
_____:

**APPEARANCES:**

> GERMAINE GREENE, Petitioner <u>Pro</u> <u>Se</u>
> #32662-112
> FCI McKean
> P.O. Box 8000
> Bradford, Pennsylvania 16701
>
> KAREN HELENE SHELTON, AUSA
> OFFICE OF THE U.S. ATTORNEY
> United State Court House
> 402 East State Street, 4th Floor
> Trenton, New Jersey  08608
> Attorney for Respondents

**BUMB, District Judge**

Petitioner Germaine Greene ("Greene"), a federal prisoner
currently confined at the Federal Correctional Institution McKean
at Bradford, Pennsylvania ("FCI McKean"), submitted a petition
for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] on or

-----

[1]  Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the

about April 21, 2010.  He paid the filing fee on April 28, 2010.[2] The named respondent (hereinafter, the "Government") is Donna Zickefoose, Warden at FCI Fort Dix, where Greene was confined at the time he filed this petition.  On June 9, 2010, counsel for the Government filed a response to the petition, including the relevant administrative record of the case (Docket entry no. 7). Greene filed a reply or traverse on July 6, 2010 (Docket entry no. 8).  The Government filed a surreply on July 15, 2010, (Docket entry no. 9), to which Greene objected by letter dated July 29, 2010.  (Docket entry no. 10).

Greene was transferred from FCI Fort Dix to FCI McKean in October 2010.

Because it appears from a review of the submissions and record that Greene is not entitled to relief, the petition will be denied.

---

Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
        * * *
(c) The writ of habeas corpus shall not extend to a prisoner unless-... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

[2] Greene also filed a motion for appointment of counsel.

**BACKGROUND**

**A.    The Second Chance Act**

Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008. In essence, the Act extended the maximum amount of time that the Bureau of Prisons ("BOP") may place an inmate in an RRC from 180 days to twelve months.

Regularly referred to as the "Second Chance Act," the amended statute provides, in pertinent part:

> (1) In General.-The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.-The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
> ...
>
> (4) No limitations.-Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
> ...
>
> (6) Issuance of regulations.  The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007,

3

> which shall ensure that placement in a community
> correctional facility by the Bureau of Prisons is-
>
>> (A) conducted in a manner consistent with
>> section 3621(b) of this title;
>>
>> (B) determined on an individual basis; and
>>
>> (C) of sufficient duration to provide the
>> greatest likelihood of successful
>> reintegration into the community.

18 U.S.C. § 3624(c).  As noted in the statute, the BOP was

ordered to issue regulations not later than 90 days after the

date of the enactment of the Second Chance Act, to ensure that

placement was conducted consistently with § 3621(b) of the

statute, that the determination was individualized, and that the

duration of placement was sufficient.  Section 3621(b) states:

> (b)  Place of imprisonment.  The Bureau of Prisons
> shall designate the place of the prisoner's
> imprisonment.  The Bureau may designate any
> available penal or correctional facility that
> meets minimum standards of health and habitability
> established by the Bureau, whether maintained by
> the Federal Government or otherwise and whether
> within or without the judicial district in which
> the person was convicted, that the Bureau
> determines to be appropriate and suitable,
> considering-
>
>> (1) the resources of the facility contemplated;
>> (2) the nature and circumstances of the offense;
>> (3) the history and characteristics of the prisoner;
>> (4) any statement by the court that imposed the
>>     sentence- (A) concerning the purposes for which
>>     the sentence to imprisonment was determined to be
>>     warranted; or (B) recommending a type of penal or
>>     correctional facility as appropriate; and
>> (5)  any pertinent policy statement issued by the
>>     Sentencing Commission pursuant to Section
>>     994(a)(2) title 28 . . .

4

> . . . Any order, recommendation, or request
> by a sentencing court that a convicted person
> serve a term of imprisonment in a community
> corrections facility shall have no binding
> effect on the authority of the Bureau under
> this section to determine or change the place
> of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers", providing staff guidance for implementing the Second Chance Act.  The memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04, concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above.  Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of
> 12 months pre-release RRC placements, Bureau experience
> reflects inmates' pre-release RRC needs can usually be
> accommodated by a placement of six months or less.
> Should staff determine an inmate's pre-release RRC
> placement may require greater than six months, the
> Warden must obtain the Regional Director's written
> concurrence before submitting the placement to the
> Community Corrections Manager.

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F. Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' placement decisions to RRCs or home

detention.   See 28 C.F.R. §§ 570.20-570.22.   The regulations do
not include the requirement in the April 14, 2008 memo for
approval from the Regional Director for pre-release RRC placement
beyond six-months.[3]

---

[3]   Title 28 of the Code of Federal Register, section 570.22
states: "Inmates will be considered for pre-release community
confinement in a manner consistent with 18 U.S.C. section
3621(b), determined on an individual basis, and of sufficient
duration to provide the greatest likelihood of successful
reintegration into the community, within the time-frames set
forth in this part."

The time frames noted are set forth in section 570.21, which
states:

(a) Community confinement. Inmates may be designated to
community confinement as a condition of pre-release
custody and programming during the final months of the
inmate's term of imprisonment, not to exceed twelve
months.

(b) Home detention. Inmates may be designated to home
detention as a condition of pre-release custody and
programming during the final months of the inmate's
term of imprisonment, not to exceed the shorter of ten
percent of the inmate's term of imprisonment or six
months.

(c) Exceeding time-frames. These time-frames may be
exceeded when separate statutory authority allows
greater periods of community confinement as a condition
of pre-release custody.

28 C.F.R. § 570.21

B.   **Petitioner's Claims and Application of the Act.**

    1.   Background of Petitioner's Case

Greene was convicted by guilty plea in the United States District Court for the Central District of California, for transportation of a minor with intent that the minor engage in prostitution, in violation of 18 U.S.C. § 2423(A).  On June 25, 2007, Greene was sentenced to a term of 78 months in prison. (See Respondent's Declaration of Tara Moran ("Moran Decl.") at Exhibit 1).

On or about November 10, 2009, while Greene was incarcerated at FCI Otisville in New York, his Unit Team evaluated Greene for RRC placement and recommended a five to six month placement as sufficient to meet Greene's needs for a successful transition into the community.  (Moran Decl., at Ex. 2a - RRC Consideration form).

Greene was then transferred to FCI Fort Dix on or about January 12, 2010.  A program review was conducted by his Unit Team at FCI Fort Dix on March 12, 2010. (Declaration of Kellyann Smith ("Smith Decl.") at ¶ 7).  At that time, Greene had requested that he be re-evaluated for additional RRC placement, but a re-evaluation was not done because FCI Otisville already had made a RRC placement recommendation and FCI Fort Dix had not yet received Greene's Central File, which contains the inmate's

Presentence Investigation Report ("PSIR") necessary for making a RRC placement evaluation.  (Smith Decl., at ¶ 7).

On May 19, 2010, after the FCI Fort Dix Unit Team received Greene's Central File, and based upon Greene's request for a re-review of his RRC placement upon his completion of "N-RDAP" and "ISDS" programing, the Unit Team reconsidered Greene for RRC placement.  (Smith Decl., at ¶ 8).  The Unit Team determined that Greene was eligible for 30 to 60 days RRC placement based upon his established employment history, approved release residence, close ties with family and monetary support (as indicated by about $1700.00 in commissary deposits in the last six months of the review).  (Smith Decl., ¶ 9 and Ex. 3a, the May 19, 2010 RRC Re-Consideration form).  In addition, the Unit Team considered that Greene's offense of transporting a minor for the purposes of engaging in prostitution has public safety implications necessitating a shorter RRC placement.  The Unit Team also took into account Greene's successful completion of the NRDAP and other release preparation programs.  Weighing all of these factors, the Unit Team determined that 30 to 60 days RRC placement would be sufficient to provide Greene with the greatest likelihood of successful reintegration.  (Id.).

In particular, the Unit Team considered the following factors in formulating a RRC placement date for Greene: (1) the resources of the facility contemplated (bed space availability);

8

(2) the nature and circumstance of the offense; (3) the history and characteristics of the prisoner; (4) any statement of the court that imposed the sentence ...; (5) any pertinent policy statement issued by the U.S. Sentencing Commission; and (6) whether the inmate completed Inmate Skills Development programming or residential or non-residential drug abuse treatment programs.  (Id., at Ex. 3a).  The Unit Team also considered, as part of these factors, Greene's need for services, public safety, and the BOP's need to manage its inmate population.  (Id.).  The Unit Team made the following specific findings in determining that 30 to 60 days RRC placement was appropriate:

> Upon release from federal confinement, inmate Greene has an approved release residence with his mother in Brooklyn, New York.  He has secured employment with his Uncle, Reverend Walker, at the St. James Baptist Church in Brooklyn, NY, where he will work with computers.  Prior to incarceration, inmate Greene reported earnings in the amount of $5,000.00 to $10,000.00 per month working as a studio engineer.  He further reported working as a "Ghost Writer" for Arista Records, and evidenced work as an independent Barber in New York as well as a security guard.  In addition, while incarcerated, inmate Greene earned his NFPT Certification, completed the 40 Hour Drug Education Program and completed numerous life skills courses related to family and finance.  Inmate Greene has also evidenced strong family ties who will assist him financially upon release.  A review of inmate Greene's inmate account balance reveals he has received $1,700.49 within the past six months.  The Unit Team has also considered the nature and circumstances of inmate Greene's instant offense, Transportation of a Minor With Intent That the Minor Engage in Prostitution.  Specifically, inmate Greene transported a 14 year old girl from Maryland to California with the intent for the minor to engage in prostitution.  Further, inmate Greene advertised the minor girl's picture via internet to solicit sexual encounter.

9

Based on this behavior, the Unit Team believes the public
safety of the community is a factor.  In consideration of
the above, a confirmed residence, strong family ties,
confirmed employment, employment history, employable skills
and public safety issue, the Unit Team feels that the
recommendation for a 30 to 60 day RRC placement is
sufficient and will provide the greatest likelihood for
successful reintegration into the community.  The Unit Team
has also encouraged inmate Greene to increase his efforts in
the saving of funds for release.

(Id., at Ex. 3a).

Greene has not exhausted his administrative remedies with

respect to the FCI Fort Dix Unit Team recommendation before

commencing this habeas action.[4]  Rather, he went through the

administrative remedy process with regard to the FCI Otisville

RRC placement recommendation before the FCI Fort Dix

recommendation.  Accordingly, the Government contends that the

_____

[4]  The BOP Administrative Remedy Program is a multi-tier
process that is available to inmates confined in institutions
operated by the BOP for "review of an issue which relates to any
aspect of their confinement." 28 C.F.R. § 542.10.  An inmate
must initially attempt to informally resolve the issue with
institutional staff. See 28 C.F.R. § 542.13(a).  If informal
resolution fails or is waived, an inmate may submit a BP-9
Request to "the institution staff member designated to receive
such Requests (ordinarily a correctional counsel)" within 20 days
of the date on which the basis for the Request occurred, or
within any extension permitted. See 28 C.F.R. § 542.14.  An
inmate who is dissatisfied with the Warden's response to his BP-9
Request may submit a BP-10 Appeal to the Regional Director of the
BOP within 20 days of the date the Warden signed the response.
See 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's
General Counsel on a BP-11 form within 30 days of the day the
Regional Director signed the response. See id.  Appeal to the
General Counsel is the final administrative appeal. See id.  If
responses are not received by the inmate within the time allotted
for reply, "the inmate may consider the absence of a response to
be a denial at that level."  28 C.F.R. § 542.18.

petition should be dismissed for failure to exhaust administrative remedies.

2.  Exhaustion of Administrative Remedies

As an initial matter, this Court notes that Greene did not fully exhaust his administrative remedies before filing this habeas petition.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals,

11

840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit. See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998). The court recognized that exhaustion could be excused where it would be futile. See id. In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial. Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20). Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue

need not be reached.  See id.  See also Fraley v. Bureau of
Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion
was not required because it was futile, as Regional Director
would "almost certainly" have denied request, and term of
imprisonment was completed).

Here, this Court finds that, although Greene had an
opportunity to exhaust his administrative remedies, he failed to
do so.  Nevertheless, at the time that the FCI Fort Dix Unit Team
made their recommendation for RRC placement in May 2010, and with
Greene's projected release date of May 15, 2011, any attempt to
exhaust administrative remedies seeking a 12-month RRC placement
would have been futile.  Consequently, even if Greene was
successful in pursuing his administrative remedies, he would have
lost several months for his extended RRC placement.  Therefore,
this Court concludes that Greene did not have adequate time to
fully pursue his administrative remedies before bringing this
action.  Moreover, because this Court finds that Greene's claim
is not meritorious, as set forth below, Greene's failure to
exhaust becomes moot.

2.   Claims and Defenses Asserted in this Action

Petitioner principally refers to Strong v. Schultz, 599 F.
Supp. 556 (D.N.J. 2009) for his contention that the BOP
disregarded the Second Chance Act in denying him a 12-month RRC
placement.  (See Petition at pg. 5).  He argues that the BOP did

13

not consider his successful completion of a RDAP and other life skills programs in making the limited RRC placement recommendation.  He contends that the BOP disregarded the Second Chance Act and limited its decision based on the April 14, 2008 and November 14, 2008 memorandums.  Greene also argues that he does not have an uncle who promised him employment, and denies that he ever told the Unit Team that he had an uncle.  It appears that Greene is attempting to discredit the information relied upon by the Government in an argument that the BOP did not act in good faith.  Greene further argues that the Unit Team did not consider his drug abuse history, his $2,000.00 Bank of America debt, and the fact that he has a nine year old son dependent on him.  He also contends that the 30 to 60 day RRC placement recommendation is far shorter than the 150 to 180 day RRC placement recommendation made by the FCI Otisville Unit Team.

The Government contends that the BOP fully complied with the requirements of the Second Chance Act, and made a wholly-individualized evaluation and determination in Greene's case.  The Unit Team's individualized review considered the pertinent factors under § 3621(b) as follows: (1) the community resources and bed spaces available; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner (which includes an extensive criminal history with several convictions of violent offenses, no prison disciplinary actions,

14

GED and Release Preparation Program ("RPP"), limited work history and education). Finally, the Government shows that Greene had provided the information to the Unit Team concerning his uncle as evidenced by his signature on the Supervision Release Plan.

## DISCUSSION

In <u>Strong v. Schultz</u>, 599 F. Supp.2d 556 (D.N.J. 2009), the petitioner, Douglas Strong's RRC placement decision was made on October 2, 2008. Thus, the decision was made subsequent to the April 14, 2008 memo, but prior to the October 21, 2008 enactment of the regulations by the BOP. In <u>Strong</u>, the court held that the April 14, 2008 Memorandum issued by the BOP was inconsistent with the Second Chance Act's amendments to 3624(c), because it "impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)." <u>Strong</u>, 599 F. Supp.2d at 563. Thus, as to Mr. Strong, the court held:

> Accordingly, because the duration of Strong's [RRC] placement was determined pursuant to these impermissible limitations, the BOP abused its discretion in determining that Strong's placement would be for six months. This Court will therefore grant the writ to Strong, and remand the matter to the BOP with instructions to consider Strong for a longer placement in a [RRC], in accordance with the Second Chance Act, and without regard to the April 14, 2008, Memorandum.

<u>Id.</u> at 563.

15

In this case, however, Greene's placement decision was made well after the effective date of the interim rule.  Nevertheless, Greene suggests that his placement decision was impermissibly constrained by the six-month presumption contained in the April 14, 2008, memorandum.  Greene provides no factual support for this allegation.

Courts since <u>Strong</u> have recognized the limited holding of <u>Strong</u>.  In cases, such as here, where Greene's RRC placement decision was made after the BOP issued the appropriate regulations and abandoned the directive in the Memorandum concerning the six-month presumptive placement, courts have consistently held that the Second Chance Act does not guarantee a one-year RRC placement, but "only directs the Bureau of Prisons to consider placing an inmate in a RRC for *up to* the final twelve months of his or her sentence."  <u>Lovett v. Hogsten</u>, 2009 WL 5851205 (6th Cir. Dec. 29, 2009)(unpubl.); <u>see also</u> <u>Travers v. Federal Bureau of Prisons</u>, 2009 WL 4508585 (D.N.J. Nov. 30, 2009)(Hillman, J.)(finding that ". . . nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 120-150 days already approved.  These pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations."); <u>Creager v. Chapman</u>, 2010 WL 1062610 (N.D. Tex. Mar. 22,

2010)(holding that although Petitioner disagrees with her RRC placement date after consideration of the § 3621(b) factors, this "does not establish a constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles [Petitioner] or any other prisoner to any guaranteed placement in a residential reentry center[]" and "'the duration of [RRC] placement is a matter to which the [BOP] retains discretionary authority.'" (citations and quotation omitted)); <u>Chaides v. Rios</u>, 2010 WL 935610 (E.D. Cal. Mar. 15, 2010)("In sum, the BOP has discretionary authority to transfer an inmate to an RRC at any time, after considering the factors set forth in 18 U.S.C. § 3621(b), and has a separate and distinct obligation to consider an inmate for transfer to an RRC for up to twelve months prior to the inmate's release date, after considering the factors set forth in section 3621(b)." (citation omitted)).

In distinguishing <u>Strong</u>, the Middle District of Pennsylvania examined a claim by a petitioner who received a 60-day RRC placement recommendation.  See <u>Wires v. Bledsoe</u>, 2010 WL 427769 (M.D. Pa. Feb. 3, 2010).  In the <u>Wires</u> case, the court found that:

> . . . since the petitioner's unit team recommended significantly less than six months (only 60 days) in a RRC, there is no basis to infer that their discretion was in any way constrained or chilled by the requirement stated in the memoranda that RRC placement beyond six months must be based on unusual or extraordinary circumstances and must be approved by the Regional Director.

The petitioner was considered for placement in a RRC. Thus, he was not denied due process. Further, there is no basis to infer in the instant case that the petitioner did not receive the individualized consideration for RRC placement required by the Second Chance Act. That petitioner disagrees with the recommendation for a 60-day placement is not a basis to issue a writ of habeas corpus.

Id. at *12. The Wires court cited Torres v. Martinez, a case also in the Middle District of Pennsylvania, which was dismissed for failure to exhaust administrative remedies. However, the Torres court also examined the merits of the case, finding:

Torres asserts that the April 14, 2008 Bureau of Prison Memorandum imposes a policy of categoric pre-release placement for a time of six months or less because placement for a period greater than six months requires approval by a Bureau of Prisons Regional Director. The petitioner states that denying prison staff the discretion to recommend a placement longer than six months without advance written approval by a Regional Director is inconsistent with 18 U.S.C. 3624(c), as interpreted in Strong, 599 F. Supp.2d at 561-62.

In Strong, the court found that the policies elaborated in the April 14, 2008 Memorandum were in violation of regulatory guideposts included in the Second Chance Act's amendments to 18 U.S.C. § 3624(c). It held that the "[m]emorandum impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)."

There is evidence that the April 14, 2008 Memorandum has been replaced with formal federal regulations applicable to the petitioner. Interim regulations passed on October 21, 2008 state that "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a). Moreover "[i]nmates will be considered for

18

> pre-release community confinement in a manner
> consistent with 18 U.S.C. § 3621(b), determined on an
> individual basis, and of sufficient duration to provide
> the greatest likelihood of successful reintegration
> into the community, within the time-frames set forth in
> this part." 28 C.F.R. § 570.22 (Oct. 22, 2008).
>
> The court finds that the Bureau of Prisons did not
> violate the Second Chance Act when it determined that
> Petitioner Torres would be placed in pre-release
> custody for six months, regardless of whether it
> followed the April 18, 2008 Memorandum or the October
> 2008 Regulations when it reviewed the petitioner's
> case.  In doing so, the court declines to extend the
> reasoning of <u>Strong</u> to the petition before us.  Unlike
> <u>Strong</u>, the petitioner has provided no reason why he
> requires more than six months of pre-release placement,
> other than that it would give him the greatest
> likelihood of successful reintegration.

<u>Torres v. Martinez</u>, 2009 WL 2487093, at *4-5  (M.D. Pa. Aug. 12,

2009)(internal citations omitted).

Likewise, the Eastern District of Kentucky has distinguished

<u>Strong</u> in <u>Ramirez v. Hickey</u>, 2010 WL 567997 (E.D. Ky. Feb. 12,

2010), finding that the petitioner's reliance on <u>Strong</u> was

misplaced, because Mr. Strong's RRC placement was determined in

accordance with the memorandum.  In petitioner Ramirez's case,

there was nothing presented to indicate that the RRC placement

decision was "based upon arguably discretion-limiting criteria

contained in the now defunct April 14, 2008, Memorandum.

Consequently, the reasoning of <u>Strong</u> is inapplicable here ...."

<u>Ramirez</u>, at *4.

In fact, cases brought before various district courts around

the country have resulted in the courts examining whether the §

3621(b) factors were considered by the BOP in making the RRC placement decision, after an individualized assessment.  When the 3621(b) factors are considered, the courts are satisfied that the law was correctly applied and followed.

In the Eastern District of Arkansas, the District Court examined BOP Program Statement 7310.04.  <u>See</u> <u>Lewis v. Outlaw</u>, 2010 WL 1198179 (E.D. Ark. Mar. 23, 2010).  That Program Statement states that RRC needs can usually be met by placement of six months or less, stating:

> (1) An inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification. In such circumstances, the Warden shall contact the Regional Director for approval and the Chief USPO in the inmate's sentencing district to determine whether the sentencing judge objects to such placement.

Program Statement 7310.04, P. 8.  The Eastern District of Arkansas, citing the Court of Appeals for the Eighth Circuit, noted that the "extraordinary justification" requirement was "a legitimate standard, consistent with 18 U.S.C. § 3621(b), that the BOP may use when considering a request for extended RRC placement." <u>Lewis</u>, at *3 (citing <u>Miller v. Whitehead</u>, 527 F.3d 752 at 758-59 (8th Cir. 2008)).  The Eastern District of Arkansas found that the BOP policy "is a valid exercise of the BOP's broad discretion under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)." <u>Lewis</u>, at *3.

In the case before this Court, it is clear that Greene was considered for RRC placement in accordance with the factors enumerated in § 3621(b), and on an individualized basis.  This is evidenced by the Exhibits to the Smith Declaration.  The Unit Team emphasized Greene's strong employment history, the numerous life skills programs Greene completed, strong family ties, promised employment with his Uncle and residence with his mother upon release.  The Unit Team also observed that Greene has family who will assist him financially as demonstrated by significant money deposits made in Greene's commissary account.  The Unit Team also expressed concern for public safety given the nature of Greene's offense.  Thus, given all of the above information relied upon by the BOP, this Court finds that the BOP's consideration of all of the criteria under § 3621(b) was thorough and individualized, and consistent with the Second Chance Act requirements.

Moreover, the <u>Strong</u> decision does not apply to Greene's case, as his RRC placement decision was (1) decided after the BOP imposed appropriate regulations; and (2) was decided in accordance with the factors set forth in § 3621(b).  Greene also fails to counter the Unit Team's review with any supportable facts except his self-serving statement that he does not have an uncle who will give him a job.  The Government provided the Supervision Release Plan which listed this information, and which

was signed by Greene.  Further, the discrepancy between the FCI Otisville Unit Team recommendation and the FCI Fort Dix Unit Team recommendation may be explained by Greene's successful completion of RDAP and other life skills courses after the first recommendation was made.  Indeed, Greene had requested a re-evaluation of his RRC placement based on his completion of these programs.

Thus, based on the foregoing, this Court finds that the BOP complied with the Second Chance Act and Greene has not demonstrated that he "is in custody in violation of the Constitution or laws or treaties of the United States ..." as require for relief under 28 U.S.C. § 2241.

<u>**CONCLUSION**</u>

For the foregoing reasons, the petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, is hereby denied.  An appropriate Order accompanies this Opinion.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
United States District Judge

Dated:<u> December 22, 2010</u>